UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. _____

**JOSEPH POPE,**
Plaintiff,

v.

**CITY OF BOSTON,** and
**Det. PETER O'MALLEY,**
Defendants.

<u>**COMPLAINT AND JURY DEMAND**</u>
*(42 U.S.C. § 1983)*

## I. INTRODUCTION

1. This civil rights action arises from the unlawful arrest, false imprisonment, racially discriminatory investigation, and prolonged pretrial detention of Plaintiff Joseph Pope, beginning on May 23, 1984, and lasting approximately twenty-three (23) months.[1]

2. As a result of Defendants' actions, Plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments, including the rights to be free from unreasonable seizure, to due process of law, to equal protection, and to familial association with his daughter, Leah Jackson.[2]

3. Although the underlying events occurred in the mid-1980s, Plaintiff did not and could not reasonably discover the cause of his constitutional injuries—namely, fabricated evidence, false statements, witness coercion, and racially discriminatory investigative practices by Detective Peter O'Malley—until August 2024, when the Supreme Judicial Court issued its decision in <u>***Commonwealth v. Raymond Gaines***</u>, 494 Mass. 525 (2024).[3]

4. Plaintiff has brought this action promptly after that discovery. Defendants are equitably estopped from asserting a statute-of-limitations defense.[4]

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper in this District under 28 U.S.C. § 1391(b).

## III. PARTIES

7. Plaintiff **Joseph Pope** is a Black man and resident of Massachusetts.

8. Defendant **City of Boston** is a municipal corporation responsible for the policies, customs, training, supervision, and discipline of the Boston Police Department.

9. Defendant **Peter O'Malley** was, at all relevant times, a detective with the Boston Police Department acting under color of state law.

## IV. BACKGROUND

10. At the time of his arrest on May 23, 1984, Plaintiff was engaged to Kimbly Jackson.

11. Ms. Jackson was approximately four months pregnant with the couple's first child.

12. Plaintiff was gainfully employed, earning regular wages, and was preparing to provide financial support and stability for his growing family.

13. Plaintiff's employment constituted a critical source of household income in anticipation of the imminent birth of his child.

14. Plaintiff's arrest and subsequent prolonged pretrial detention abruptly terminated his employment and foreclosed his ability to earn income during that period.[1]

15. As a direct and foreseeable result, Plaintiff lost wages and employment-related benefits and suffered an interruption to his work history and earning trajectory at a formative stage of his adult life.

16. Due to his unlawful pretrial confinement, Plaintiff was unable to be present for the birth of his daughter, Leah Jackson, on October 22, 1984.[2]

17. Plaintiff was deprived of the opportunity to support his child's mother during labor and delivery and to participate in the birth of his first child.

18. Plaintiff was further deprived of the opportunity to prepare for parenthood and to establish a stable family unit at the time of his child's birth.[2]

## V. FACTUAL ALLEGATIONS

### A. Arrest and Investigation

19. On May 23, 1984, Plaintiff was arrested for murder by members of the Boston Police Department.

20. Detective Peter O'Malley served as the lead detective in the investigation that led to Plaintiff's arrest and prolonged detention.

21. In that role, Detective O'Malley knowingly relied on false evidence and materially false statements from a cooperating witness known to law enforcement as a drug dealer, and presented that information as credible despite its unreliability.[5]

22. Detective O'Malley further misrepresented witness credibility and suppressed information undermining probable cause.[6]

23. As a result, Plaintiff was seized and arrested without lawful probable cause, in violation of the Fourth Amendment.[1]

---

### B. Prolonged Pretrial Detention

24. Following his arrest, Plaintiff was detained for approximately twenty-three (23) months prior to trial.

25. During this period, exculpatory and impeachment evidence was concealed, and no meaningful reassessment of probable cause occurred.[6]

26. Plaintiff remained detained without a lawful basis, in violation of the Fourth and Fourteenth Amendments.[7]

---

## C. Racial Discrimination

27. The Plaintiff is Black.

28. Plaintiff's arrest and prosecution occurred during a period of documented racially discriminatory policing in Boston, particularly affecting Black men accused of serious crimes.

29. Detective O'Malley's investigation was influenced by racial bias and discriminatory assumptions, resulting in differential treatment and a presumption of guilt not applied to similarly situated white suspects.[8]

---

## D. Familial Association

30. As a direct and foreseeable result of Plaintiff's unlawful arrest and prolonged detention, Plaintiff was deprived of his fundamental right to familial association with his child.[9]

31. This deprivation included Plaintiff's inability to be present for the birth of his daughter on October 22, 1984, and the loss of the opportunity to establish a parent-child bond during her infancy.[10]

---

## E. Municipal Policy and Custom

32. At all relevant times, the City of Boston maintained policies, customs, and practices that tolerated fabrication and concealment of evidence, failed to train detectives on constitutional limits governing arrests and investigations, and failed to discipline officers for misconduct.[11]

33. These policies and practices constituted deliberate indifference and were the moving force behind Plaintiff's injuries.[12]

## VI. DELAYED ACCRUAL AND EQUITABLE TOLLING

34. Plaintiff's claims did not accrue at the time of his arrest or detention because Defendants' misconduct was inherently self-concealing.[13]

35. Although Plaintiff knew he had been arrested in 1984, he did not know—and could not reasonably have known—that his arrest and detention were caused by fabricated evidence and racially discriminatory policing, rather than error or negligence.[13]

36. In August 2024, the Supreme Judicial Court confirmed in ***Commonwealth v. Raymond Gaines***, 494 Mass. 525 (2024), that Detective O'Malley engaged in repeated false statements, witness coercion, and evidence concealment during the same era.[3]

37. Prior to that decision, the Commonwealth failed for decades to disclose disciplinary and misconduct records relating to O'Malley.[14]

38. Plaintiff acted diligently upon discovery. Defendants are equitably estopped from asserting a statute-of-limitations defense.[15]

## VII. CLAIMS FOR RELIEF

### COUNT I – Unreasonable Seizure and False Imprisonment

*(Fourth & Fourteenth Amendments – § 1983)*

39. Defendants arrested and detained Plaintiff without probable cause.[1]

### COUNT II – Due Process

*(Fourteenth Amendment – § 1983)*

40. Defendants deprived Plaintiff of liberty through fabricated evidence and prolonged detention.[5,7]

### COUNT III – Equal Protection

*(Fourteenth Amendment – § 1983)*

41. Defendants intentionally discriminated against Plaintiff on the basis of race.[8]

### COUNT IV – Deprivation of Familial Association

*(Fourteenth Amendment – § 1983)*

42. Defendants intentionally and unjustifiably interfered with Plaintiff's relationship with his child.[9,10]

### COUNT V – Municipal Liability (Monell)

*(42 U.S.C. § 1983)*

43. Plaintiff's injuries were caused by the City's policies, customs, and deliberate indifference.[11,12]

## VIII. DAMAGES

44. Plaintiff suffered loss of liberty, emotional distress, loss of employment income, interruption of earning capacity, destruction of family life, and permanent constitutional injury.[16]

45. The psychological, emotional, and physical harms Plaintiff suffered as a result of his unlawful pretrial confinement and forced separation from his family were profound and enduring. Those harms were inflicted during Plaintiff's pretrial detention and include lasting trauma associated with prolonged isolation, family separation, and deprivation of liberty at a critical stage of his life. The permanence and severity of those injuries became evident over time, including in light of the extraordinary duration of Plaintiff's subsequent incarceration, which ultimately exceeded thirty-six years before his murder conviction was vacated by the Supreme Judicial Court. See *Commonwealth v. Pope*, SJC No. 13202. **Plaintiff does not seek damages in this action for post-conviction incarceration or for injuries arising from the conviction itself, which were the subject of separate proceedings.**

46. Plaintiff seeks $8,000,000 in compensatory damages, plus attorney's fees and costs under 42 U.S.C. § 1988.

## IX. JURY DEMAND

47. Plaintiff demands a trial by jury on all issues so triable.

---

## X. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and grant such other relief as it deems just and proper.

**DISCLAIMER**: Plaintiff seeks relief solely for injuries arising from Defendants' conduct during Plaintiff's pretrial arrest and detention, and **not** for harms arising from Plaintiff's subsequent prosecution, conviction, or post-conviction incarceration.

January 16, 2026

Respectfully submitted,

Joseph Pope
28 Sargent Street
Boston, MA 02124
Email: jabirpope615@gmail.com

# **FOOTNOTES (AUTHORITIES)**

1. <u>Manuel v. City of Joliet</u>, 580 U.S. 357 (2017); <u>Beck v. Ohio</u>, 379 U.S. 89 (1964); <u>Hernández-Cuevas v. Taylor</u>, 723 F.3d 91 (1st Cir. 2013).

2. <u>Santosky v. Kramer</u>, 455 U.S. 745 (1982); <u>Troxel v. Granville</u>, 530 U.S. 57 (2000). <u>Commonwealth v. Raymond Gaines</u>, 494 Mass. 525 (2024).

3. <u>Rotella v. Wood</u>, 528 U.S. 549 (2000); <u>Abdallah v. Bain Capital LLC</u>, 752 F.3d 114 (1st Cir. 2014).

4. <u>Limone v. Condon</u>, 372 F.3d 39 (1st Cir. 2004); <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

5. <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Giglio v. United States</u>, 405 U.S. 150 (1972); <u>Drumgold v. Callahan</u>, 707 F.3d 28 (1st Cir. 2013).

6. <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44 (1991).

7. <u>Whren v. United States</u>, 517 U.S. 806 (1996); <u>Village of Arlington Heights v. Metropolitan Housing Dev. Corp.</u>, 429 U.S. 252 (1977).

8. <u>Hatch v. Department for Children, Youth & Their Families</u>, 274 F.3d 12 (1st Cir. 2001).

9. <u>Rivera v. Rhode Island</u>, 402 F.3d 27 (1st Cir. 2005).

10. <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

11. <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Bordanaro v. McLeod</u>, 871 F.2d 1151 (1st Cir. 1989).

12. <u>McDonough v. Smith</u>, 588 U.S. 109 (2019); <u>Poy v. Boutselis</u>, 352 F.3d 479 (1st Cir. 2003).

13. <u>Matter of a Grand Jury Investigation</u>, 485 Mass. 641 (2020

14. <u>Santos-Espada v. Cancel-Lugo</u>, 312 F.3d 1 (1st Cir. 2002).

15. <u>Carey v. Piphus</u>, 435 U.S. 247 (1978).